IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

FRANCISCA DOMINGUEZ                                                                PLAINTIFF

v.                                            Civil No. 2:25-CV-02038-TLB-MEF

FRANK BISIGNANO, Commissioner,
SOCIAL SECURITY ADMINISTRATION                                          DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Francisca Dominguez, brings this action for judicial review pursuant to 42 U.S.C.

§ 405(g).  She challenges the Social Security Commissioner's final decision denying her

application for a period of disability and disability insurance benefits under Title II of the Social

Security Act, 42 U.S.C. § 423(d)(1)(A).  The Court's task on judicial review is to consider the

entire administrative record and determine whether substantial evidence supports the

Commissioner's decision.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive.").

### I.    BACKGROUND

Plaintiff was insured under Title II until March 31, 2013.  (ECF No. 8, pp. 181, 185, 206,

215).  On that date, she was 53 years old, had a high school education, and had previously

performed light, semi-skilled work as a file clerk and as a general clerk.  (*Id.,* pp. 21-22, 36-41,

50).  She filed her disability application on January 19, 2022, alleging the onset of disability on

August 16, 2007, due to "back and heart issues and memory problems."  (ECF No. 8, pp. 140-142,

145-146, 181-189).  In the function report and questionnaires Plaintiff submitted in July 2022, she

indicated that she was experiencing worsening neck and back pain that radiated to her middle and

lower back, shoulders, and arms, and that she was now experiencing migraine episodes up to three

times weekly, with pain from her head to her neck which kept her bed ridden for up to two days. (*Id.,* pp. 190, 198-199, 201-202).  She indicated that her back pain occurred when she lifted more than 10 to 15 pounds, when squatting or bending, and when sitting or standing more than 20 to 45 minutes.  (*Id.,* p. 198).  Plaintiff also indicated that resting, medication, and CBD balms relieved her pain but not completely.  (*Id.,* pp. 199, 202).

Plaintiff's claim was initially denied on September 6, 2022.  (ECF No. 8, pp. 58-63).  On November 1, 2022, while her request for reconsideration was pending, Plaintiff alleged that a change in her physical conditions had occurred on or about September 25, 2022.  (*Id.,* pp. 208-214).  She explained that her migraines had worsened, that she was experiencing pain in her shoulders and upper arms, and that, as a result of new imaging, she was to undergo back surgery in January 2023.  (*Id.*).  She noted that since the initial denial of her claim, she had seen her primary care physician on September 27, 2022, for back pain and migraines, and had been seen at a neurosurgery clinic in October 2022 for back problems and severe pain, specifying "cervical stenosis & myelopathy."  (*Id.,* p. 210).

The denial of Plaintiff's claim was affirmed on reconsideration, and she sought an administrative hearing, which was held on February 1, 2024, before Administrative Law Judge ("ALJ") Camille Monahan.  (*Id.,* pp. 28-57).  Plaintiff was present with her attorney representative, Blake Ray, Jr., and she amended the onset date of her disability to March 1, 2012.  (*Id.,* pp. 14, 28, 32-33).

At the hearing, Plaintiff testified that she had last worked in 2007, before relocating to Arkansas in the same year.  (ECF No. 8, p. 35).  She indicated that she has long had "carpal tunnel" in both hands, worse in the right hand than the left, that it causes pain and numbness in her hands, and that her right arm hurts.  (*Id.,* pp. 36, 42).  She said she has used Voltaren and creams for the

pain, and wears a hand brace, but she has not had carpal tunnel or cubital tunnel surgery. She also said that she has long experienced pain in her back, shoulders, and legs, and has had headaches several days a week, including during the relevant period, but that her pain and headaches had resolved somewhat since her cervical spine intervention in 2022, with surgery in 2023. (*Id.,* pp. 42-44, 48-49).

Plaintiff further testified that she drives but that she had not driven at night for the last three years due to vision issues. (ECF No. 8, p. 33-34). She said that, due to low back pain, she could sit for only 30 to 40 minutes before needing to walk a bit, and then could sit for another 30 minutes before needing to lie down. She said that, due to low back and leg pain, she could stand and wash dishes for only 15 to 20 minutes before needing to do something else. (*Id.,* pp. 44-45). She indicated that "on a good day," including during the relevant period, she would rise early, tend to personal care, make coffee, feed her cats, relax with her husband, watch the news, make breakfast, and clean the kitchen. After that, they might go places in the car, return and have a light meal for lunch, and watch TV or go for a walk, and then she would need to lie down. (*Id.,* p. 45). She said that on a "bad day," however, when she had a headache, she would take her medicine, feed the cats, make coffee, go to bed, and that she might warm leftovers for meals, or order something out. Plaintiff also testified that she has anxiety, depression, and experiences nervousness when in crowds. (*Id.,* pp. 46-47).

On March 22, 2024, ALJ Monahan entered an unfavorable decision. (ECF No. 8, pp. 14-23). She determined that Plaintiff met the insured status requirements through March 31, 2013. (*Id.*, p. 16). She then identified Plaintiff's headaches and disorder of the skeletal spine as severe impairments during the relevant period but concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in

20 C.F.R. Part 404, Subpart P, Appendix 1.  (ECF No. 8, pp. 16-17).  ALJ Monahan found that, despite her impairments at that time, Plaintiff retained the residual functional capacity ("RFC") to perform:

> light work as defined in 20 C.F.R. § 404.1567(b) except [she can] occasionally climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl, frequently reach overhead with the right upper extremity, and frequently handle and finger with the right upper extremity; … [and can] perform simple and repetitive tasks with detailed but not complex instructions and … work at a consistent pace but not a production pace where each task must be completed within a strict time deadline.

(ECF No. 8, p. 17).

With the assistance of a vocational expert ("VE"), ALJ Monahan determined that, through her date last insured, Plaintiff could perform work as a marker, a cleaner/housekeeper, and a routing clerk.  (ECF No. 8, pp. 22, 50-51).

On January 29, 2025, the Appeals Council denied Plaintiff's request for review.  (ECF No. 8, pp. 1-5).  Plaintiff filed the Complaint in this action on April 4, 2025.  (ECF No. 2).  The parties have fully briefed the issues (ECF Nos. 10, 12), and the matter is ripe for Report and Recommendation.

## II.    LEGAL STANDARD

On judicial review, this Court determines whether the decision is supported by substantial evidence on the record as a whole.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  The threshold for substantial evidence is not high.  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  It is more than a mere scintilla of evidence, but less than a preponderance, meaning it requires "only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Kijakazi*, 22 F.4th 769, 771 (8th Cir. 2022) (quoting *Biestek*, 587 U.S. at 103).  "The substantial-evidence standard allows considerable latitude to administrative decision makers" and

4

"presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984). Thus, a reviewing court considers both evidence that detracts from the ALJ's decision and evidence that supports it, *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011), but if the decision is supported by substantial evidence on the record as a whole, it must be affirmed even if substantial evidence also exists for the opposite decision. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997).

A claimant for Social Security disability benefits bears the initial burden of proving her disability. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(5) (stating that an individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A claimant must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

To decide a claim of disability, the Commissioner's regulations require the application of a five-step process to determine, in sequential order: (1) whether the claimant has engaged in substantial gainful activity since filing the claim; (2) whether she has a severe physical or mental impairment or combination of impairments; (3) whether any such impairments meet or equal a listed impairment; (4) whether the claimant's limitations from her impairments prevent her from performing past relevant work; and, if so, (5) whether she is able to perform other work in the

5

national economy, considering her age, education, work history, and residual functional capacity. 20 C.F.R. § 404.1520(a)(4).

### III.   DISCUSSION

In this proceeding, Plaintiff challenges both the RFC determination and the finding that her combination of impairments did not medically equal a listing.  After a thorough review of the record, the undersigned finds no error and concludes that substantial evidence supports the ALJ's decision.

### A.   RFC Determination

Plaintiff first argues that the ALJ did not account for all of Plaintiff's limitations when determining her RFC.  More specifically, Plaintiff contends that the ALJ should have found her capable of only sedentary work during the relevant period and thus, considering Plaintiff's demographic profile at that time, should have determined whether she lacked transferable skills and was thus presumptively disabled under 20 C.F.R. Pt. 404, Subpt. P, App'x 2 ("the grids").  Plaintiff further suggests that even if it was proper to move past the grids and consider VE testimony, the jobs identified by the VE in response to the ALJ's hypothetical require repetitive movements or household tasks Plaintiff has said she has difficulty performing.  These arguments rest on the ALJ's credibility determination concerning Plaintiff's subjective complaints that, due to pain and related dysfunction from her impairments, she could not sit of stand long, could not lift more than 10 to 15 pounds, and could not perform household tasks, such as cooking and cleaning.  (ECF No. 10, pp. 6-8).  The undersigned finds this argument unpersuasive.

A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations, and it must be based on all credible evidence.  *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citing *Flynn v. Astrue*, 513 F.3d 788, 792 (8th Cir. 2008)).  When assessing a

claimant's credibility, the ALJ must consider the claimant's subjective complaints in relation to all the evidence, including the claimant's prior work record, the objective medical evidence, and other evidence from both medical and non-medical sources. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). *See also* Social Security Ruling ("SSR") 16-3p, "Evaluation of Symptoms in Disability Claims," 2017 WL 5180304, at 4 (Oct. 25, 2017). The ALJ's evaluation of this evidence is guided by the consideration of several factors relevant to symptom severity, such as the duration, frequency, and intensity of the symptoms; what precipitates or aggravates them; the medications, treatments, or other methods that have been used to alleviate them; and how the symptoms affect the claimant's pattern of daily living. *See Polaski*, 739 F.2d at 1322; *see also* 20 C.F.R. § 404.1529(c).

Here, the ALJ considered Plaintiff's subjective complaints that she experienced, *inter alia*, disabling headache and musculoskeletal pain that affected her neck, back, shoulders, arms, and hands. She further considered Plaintiff's statements and testimony that she experienced back pain when lifting more than 10 pounds, when squatting, bending, and when standing or sitting for more than 20 to 45 minutes. She also noted Plaintiff's description that a typical headache had unknown triggers, lasted all day, and required her to stay in bed with blurred vision and nausea up to 3 times per week, and that she takes medication and uses CBD balm for her symptoms. (ECF No. 8, p. 18, citing pp. 33-48, 184-205, 208-216, 236, 239-242). The ALJ determined, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence considered as a whole. (*Id.*, pp. 18-19).

Relevant to the duration, frequency, and intensity of Plaintiff's symptoms, as well as the treatment and medications she used to alleviate them, the ALJ considered the objective and other medical evidence, which documents not only relevant signs, findings, and observations of

Plaintiff's medical providers and examiners, but also Plaintiff's statements concerning her symptoms and her prescribed treatment. (ECF No. 8, pp. 18-19). The ALJ initially noted, however, that the record contains little objective or other medical evidence from the relevant period, and she considered pertinent evidence from outside the relevant period to the extent it shed light on Plaintiff's condition between her amended onset date and her last date insured. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (noting that evidence outside the relevant time period may be considered if it is pertinent to a medical condition that existed during the relevant period). *See also Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (the extent to which objective evidence supports the degree of symptom severity alleged by the claimant is a relevant factor to be considered).

The ALJ first considered the report of a nerve conduction study and electromyography ("NCS/EMG") which was performed on August 26, 2008, over three years before Plaintiff's amended onset date. The study was performed by Duane Birky, M.D., and showed evidence of median neuropathy bilaterally at the wrists, which appeared to be moderate on the right and mild on the left. Dr. Birky also noted some evidence of chronic radicular process, most likely at C-7 on the right side only. (ECF No. 8, pp. 319-320). Although Dr. Birky's report indicates that Plaintiff was referred for the study by Gary Griffin, D.O., the record contains no evidence of treatment or progress notes from Dr. Griffin relevant to the study or the referral.

The ALJ also considered the report of an agreed medical evaluation underpinning an award of workers' compensation benefits to Plaintiff by the State of California for what the evaluator concluded were work-related overuse and strain injuries culminating in August 2007. (ECF No. 8, pp. 19-20, 259-279). The report was prepared in 2010 by evaluator Alexander Angerman, M.D., and contained a reference to, *inter alia*, a "[c]ervical MRI scan, April 2, 2009, revealing disc

8

disease of C5-C6 and C6-C7 with 2.2-millimeter disc bulge and compromise of neural foramina bilaterally at C5-C6 and on the left side at C6-C7[.]" (ECF No. 8, p. 275). The ALJ considered the report, including this reference to objective evidence, as well as Dr. Angerman's objective findings of, *inter alia*, Plaintiff's normal gait, negative straight leg raises, and decreased cervical range of motion upon examination on January 7, 2010. (*Id.,* pp. 19-20).

Plaintiff points to this report, noting that, as to her cervical spine, it reflects her subjective complaints of increased pain when performing activities that involve lifting, reaching overhead, pushing, pulling, driving, and prolonged sitting and standing. (ECF No. 8, p. 259). That Plaintiff made subjective statements to Dr. Angerman in 2010, however, does not advance her argument that the objective and other medical evidence substantiates the degree of impairment and resulting limitation she subjectively claimed, which is the pertinent issue here. On that point—and mindful that the ALJ properly considered and rejected the workers' compensation decision and Dr. Angerman's medical opinion pursuant 20 C.F.R. §§ 404.1504; 404.1520b(c) (ECF No. 8, p. 20)— it is noteworthy that Dr. Angerman considered that Plaintiff's "subjective symptomology referable to her cervical spine can be classified as constant minimal to slight pain on most occasions, becoming more than slight, but less than moderate with heavy lifting, pushing, pulling, and prolonged motions of the cervical spine." (*Id.,* p. 275). Although Dr. Angerman's report recommended prophylactic work restrictions on heavy lifting due to Plaintiff's 2007 injury, it does not suggest any limitations on Plaintiff's capacity to sit or stand at that time or during the relevant period, nor does it suggest that Plaintiff's cervical impairment prevented her from lifting more than 10 to 15 pounds.

In addition to the foregoing evidence, the ALJ considered the objective and other medical evidence during the relevant period, noting that it reflects minimal and conservative treatment with

medication, and normal examination findings. (ECF No. 8, pp. 19-20). *See Swarthout v. Kijakazi*, 35 F.4th 608, 612 (8th Cir. 2022) (noting conservative treatment is a factor that may undermine a claim of disabling degree of conditions); *see also Whitman v. Colvin*, 762 F.3d 701, 707-708 (8th Cir. 2014) (noting limited treatment is relevant to the degree of a claimant's symptomatic impairment). The ALJ noted that Plaintiff saw her primary care provider, Dr. Laura Adams, a family practitioner at the Arkansas Heart Center, twice during the relevant period. (*Id.*, pp. 19, 292-295). She first presented to Dr. Adams on November 21, 2012, to discuss ongoing medical problems. Plaintiff sought a refill of Nexium, which she said controlled her reflux symptoms very well. She noted she was taking Voltaren (diclofenac) for her neck pain, but said she was experiencing severe headaches due to the neck pain. She said the pain radiated down her back and legs. She also reported that her left arm had been bothering her in the deltoid region down to her elbow. On examination, Plaintiff was noted to be in no acute distress; her affect was described as normal and appropriate; and her gait was normal. Dr. Adams assessed Plaintiff with esophageal reflux; unspecified joint pain; and headache. She prescribed Fioricet, as needed for headaches, and she refilled Plaintiff's prescription for Nexium. Plaintiff was to continue taking diclofenac, which had been prescribed a year earlier, before the relevant period, by Jeannie Finley, APN. (ECF No. 8, pp. 294-295, 301). Nurse Finley's treatment notes prior to the relevant period reflect Plaintiff's report that the diclofenac was effective, specifically stating that her joint pain was much better, and her medications were working well. (*Id.,* pp. 296-298).

Plaintiff's second encounter with Dr. Adams during the relevant period occurred on December 12, 2012, and concerned symptoms of an acute upper respiratory infection. Plaintiff was provided treatment instructions for a cold and was advised to return in a year for her annual gynecological exam. (ECF No. 8, pp. 292-293). The ALJ noted that Plaintiff returned for her

10

annual exam a year later, on December 30, 2013, nine months after her insured status had expired. (*Id.*, pp. 290-291).  The ALJ further noted that, at this visit, Dr. Adams again documented no abnormalities upon Plaintiff's physical examination.  (*Id.,* p. 19).  Other than a mammogram in 2014, the record reflects no further medical encounters until January 26, 2015, when Plaintiff again returned for her annual follow up.  (*Id.,* pp. 291, 302-303, 331, 549-550).  The ALJ considered the remaining medical records, including those submitted after the hearing which pertained to Plaintiff's complaints of worsening symptoms and cervical discectomy in 2022 and 2023, and she concluded they were too remote in time to be probative of the degree of Plaintiff's condition during the relevant period.  (*Id.,* p. 19).

The ALJ did not doubt that Plaintiff suffers pain and discomfort from her established impairments; she concluded that the evidence of record substantiates as much.  (ECF No. 8, pp. 18-21).  She reasonably concluded, however, that the objective medical and other evidence, including Plaintiff's testimony at the hearing, did not demonstrate a disabling degree of impairment and limitation.  (*Id.*).  The consistency of a claimant's subjective complaints is primarily for the ALJ to decide, not the courts.  *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).  Here, the ALJ considered relevant factors and gave good reasons, which are supported by substantial evidence, for partially discounting Plaintiff's subjective complaints, including her complaints of greater exertional limitations in her capacity to lift, sit, and stand during a workday, and of greater non-exertional limitations in her capacity to reach, handle, and finger.  As such, the Court finds no error and defers to the ALJ's evaluation of Plaintiff's subjective symptoms relative to the weight of the medical and other evidence.  *See Guilliams v. Barnhart*, 393 F.3d 798, 801-02 (8th Cir. 2005).

The ALJ proceeded to consider the medical opinions and prior administrative medical findings. (ECF No. 8, pp. 20-21).  As noted, the ALJ considered Dr. Angerman's report, including the documented objective medical signs and findings from his examination of Plaintiff in 2010, and the objective evidence noted in his summary of the medical records he reviewed.  She relied on some of this objective evidence when formulating Plaintiff's RFC.  The ALJ also considered Dr. Angerman's medical opinions concerning Plaintiff's limitations and disability under California's workers' compensation rubric and properly rejected the opinions under the applicable regulations.  (*Id.,* p. 20).

The ALJ also considered the prior administrative medical findings, which concluded there was insufficient evidence to evaluate Plaintiff's physical impairments as of the date last insured and that the memory impairment Plaintiff alleged was non-severe. (ECF No. 8, pp. 20-21, 58-69).  The ALJ concluded these opinions were unpersuasive.  (*Id.,* pp. 20-21).  Concerning mental impairments, the ALJ noted that the objective medical evidence pertaining to the relevant period includes no diagnosis and no treatment for mental health or memory issues and thus did not establish a mental impairment.  As for Plaintiff's physical impairments, the ALJ concluded that the objective medical evidence from 2008, 2009, and 2010 indicated cervical spine issues and chronic radicular process, most likely at C-7 on the right side only, which she noted was consistent with objective medical and other evidence during the relevant period, specifically Plaintiff's treatment for complaints of headaches, left arm, back, and leg pain during the relevant period.  She further determined that the foregoing evidence, including the cervical disc bulge in 2009, with decreased cervical range of motion noted in 2010, and right-side radiculopathy in 2008, were consistent with Plaintiff's continued capacity for light work, but with additional postural and manipulative limitations.  And she determined that Plaintiff's headaches were consistent with

12

limitation to simple and repetitive tasks with detailed but not complex instructions and work at a consistent pace but not at a production rate pace, where each task must be completed within a strict timeline. (ECF No. 20-21).

Based on the foregoing discussion and authorities, the undersigned concludes that the ALJ properly determined that Plaintiff retained the functional capacity to perform a reduced range of light work during the relevant period. As noted, the ALJ reasonably discredited Plaintiff's subjective complaints of greater exertional limitations in her capacity to sit, stand, and lift during the relevant period, as well as her complaints of greater non-exertional manipulative limitations. Thus, contrary to Plaintiff's argument, the transferability of Plaintiff's skills presents no basis for reversal. *See* SSR 82-41, 1982 WL 31389, at 1 (Jan. 1, 1982) (noting that even where there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work). *See also* 20 C.F.R. 404. 1569a(c)(2) (stating "the rules in appendix 2 do not direct factual conclusions of disabled or not disabled" where "impairment(s) and related symptoms, such as pain, only affect [a claimant's] ability to perform nonexertional aspects of work-related activities"). Further, the jobs identified by the ALJ accommodated Plaintiff's proven limitations as to repetitive movements, and the VE additionally testified that there were additional jobs that would have accommodated Plaintiff's proposed limitation to occasional reaching, feeling, and fingering. (ECF No. 8, p. 53).

Plaintiff has demonstrated no error, and the ALJ's RFC assessment is supported by substantial evidence in the record.

### B.    Medical Equivalence

Plaintiff next challenges the step-three finding pertaining to the combination of her impairments. (ECF No. 8, pp. 8-10). Plaintiff argues that the amalgam of her myriad subjective

complaints of symptoms and impairments, including symptoms and impairments not reported, diagnosed, or treated during the relevant period, "have similar impacts to her overall functionality as if she had met all of the criteria under the relevant Listings." (ECF No. 10, p. 8). She asserts that "the [Code of Federal Regulations] suggests that the severity levels of the Listings do not have to be met entirely, nor do all of the symptom criteria in the Listing, provided that there are medically equivalent limitations from the same." (*Id.,* p. 9). The argument is without merit.

The ALJ evaluated Plaintiff's disorder of the skeletal spine and her headaches under the listings and concluded that Plaintiff's impairments, considered individually or combined, neither met nor medically equaled the severity of a listed impairment. (ECF No. 8, pp. 16-17). Plaintiff does not dispute that her impairments, considered individually or combined, did not meet the requirements of a listed impairment.

To establish a claim of medical equivalence, a Plaintiff "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *See Carlson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010); *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358 (8th Cir. 2022). While Plaintiff bears the burden of proof to establish her impairment meets or is equal to a medical listing, the adjudicator is responsible for the finding of medical equivalence. *Schmitt*, 27 F.4th at 1358. Here, however, Plaintiff offers no cogent argument to support her claim of reversible error. She has neither identified a listing that her combination of impairments equaled during the relevant period, nor pointed to any evidence that demonstrates medical equivalence to a listing at that time. And the undersigned finds none.

To warrant a finding of disability based on medical equivalence at step three, the record must contain one of the following:

1. A prior administrative medical finding from a medical or psychological consultant from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or
3. A report from the [Appeals Council's] medical support staff supporting the medical equivalence finding.

Soc. Sec. Ruling (SSR) 17-2p, 2017 WL 3928306, at 3 (Mar. 27, 2017).

The record contains no findings equivalent in severity to the criteria of any listed impairment and no findings that Plaintiff's impairments or combination of impairments are the same or equal to those of any relevant listing.  Accordingly, the Court finds no reversible error on this point.

## IV.    CONCLUSION

For these reasons and upon the authorities discussed above, it is RECOMMENDED that the ALJ's decision be affirmed, and that Plaintiff's Complaint (ECF No. 2) be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED on this 6th day of July 2026.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

15